ANNIE KILGANNON v. JOHN JENKINSON.

*Trespass qu. cl.—Treble damages.*

1. Treble damages cannot be assessed where the trespass consists in tearing down a line fence which defendant honestly believes was placed on his own land.

2. Judgment in trespass *qu. cl.* was set aside where it was apparent that other controversies depended upon the one in question, and that important attainable evidence as to boundaries had not been introduced.

Error to St. Clair. (Stevens, J.) June 4.—June 10.

TRESPASS *qu. cl.* Defendant brings error. Reversed.

*Wm. T. Mitchell* and *Farrand & Jenks* for appellant. The usual order in marshaling boundaries is (1) natural boundaries; (2) artificial marks; (3) adjacent boundaries; (4) course and distance; but when it is plain that there is a mistake, or uncertainty, an inferior rule of location may control a higher: *Fulwood v. Graham* 1 Rich. (S. C.) 491; *Loring v. Norton* 8 Me. 61; *Haynes v. Young* 36 Me. 557; *Newhall v. Ireson* 8 Cush. 595; *Nelson v. Hall* 1 McL. 518; if there are no monuments, the land must be bounded by the course and distance given in the deed: *M'Iver's Lessee v. Walker* 4 Wheat. 444; *Hammond v Ridgely* 5 Har. & J. 254; *Howard v. Moale* 2 Har. & J. 267; *Drew v. Smith* 46 N. Y. 204; *Cherry v. Shade Admr.* 3 Murph. (N. C.) 82; and the same is true when monuments that once existed are gone and their places cannot be clearly proved: *Preston's Heirs v. Bowmar et al.* 2 Bibb 493; *Bagley v. Morrill* 46 Vt. 94; *Budd v. Brooke* 3 Gill 198; or when monuments are named but are indistinguishable from others, or are uncertain: *Chinoweth v. Haskell* 3 Peters 96; *Browning v. Atkinson* 37 Texas 633; the reason given why monuments are to control courses and distances is that the former are less liable to mistakes: *Davis v. Rainsford* 17 Mass. 210; when there are no monuments the land must be bounded by the courses and distances named in the patent or deeds: *Bruckner's Lessee v. Lawrence* 1 Doug. (Mich.) 27; on an issue as to the location of a boundary line it may be competent to prove, by a surveyor, that the line claimed by plaintiff is necessary to give the quantity of land called for by

his deed: *Pope v. Hanmer* 74 N. Y. 240; a survey which starts from certain points and lines not shown to be the true point of departure cannot be made the basis of a judgment establishing a boundary : *Martin v. Breaux* 12 La. Ann. 689 ; the rule is founded upon the legal presumption that all grants and conveyances are made with reference to an actual view of the premises by the parties thereto : *Raynor v. Timerson* 46 Barb. 518 ; *Smith v. Chatham* 14 Texas 322 ; *Harvey v. Mitchell* 31 N. H. 575 ; when the calls of a survey are all ascertained and no resort to extrinsic evidence is necessary, it is for the court to fix the boundary, but when parol evidence has to be resorted to, to identify the calls, the facts must be ascertained by a jury : *Ott v. Soulard* 9 Mo. 581 ; when plats are returned without any actual survey made and grants are made pursuant to them, the general rule of construction is that the most material and most certain calls in the conveyance shall control those that are less certain and less material : *Newsom v. Pryor's Lessee* 7 Wheat. 7; *Thomas's Lessee v. Godfrey* 3 Gill & J. (Md.) 142 ; as to the effect of a more recent survey than that under which the party holds, see *Lawrence v. Burris* 13 La. Ann. 611 ; *Webb's Lessee v. Beard* 1 Har. & J. (Md.) 349 ; *Wilson v. Inloes* 6 Gill (Md.) 121 ; it is not the lines reported in the survey, but the lines actually run by the surveyor, which vest in the patentee the area included in those lines : *Conn. v. Penn.* Pet. C. Ct. 496 ; *Esmond v. Tarbox* 7 Me. 61 ; when a grant of land is made with reference to a plan, the survey actually made at the time, if it can be ascertained, is to govern : *Heaton v. Hodges* 14 Me. 66 ; *Thomas v. Patten* 13 Me. 329 ; the actual survey designated by lines marked on the ground is the true survey and cannot be affected by subsequent measurements : *Norris v. Hamilton* 7 Watts (Pa.) 91 ; and when a younger survey (certainly a younger unsurveyed plat) calls for an older as an adjoinder, and no lines are found marked for the younger on the side on which the older is called, the line of the older becomes the true division line between the tracts : *Quinn v. Heart* 43 Penn. St. 337 ; *Malom v. Sallada* 48 Penn. St. 419 ; *Darrah v. Bryant* 56 Penn. St. 69 ; the proprietors of adjacent lands are tenants-in-com-mon of the common boundary line, and a fence erected on the line is a fixture in which they have an undivided interest, and for the removal of which neither can maintain trespass against the other : *Gibson v. Vaughn* 2 Bailey (S. C.) 389 ; marks found upon a junior adjoining survey, and certainly when there are no such survey marks on the land, marks or figures upon a plat of a junior subdivision or plat, can not

control or enlarge the dimensions of an earlier survey, even though the junior survey or plat adopted the lines of the older: *Clement v. Northumberland Coal Co.* 87 Penn. St. 291; the location and lines of a survey must be determined by its own land marks on the ground, not by those found thereon which were made prior to such survey or by calls of subsequent surveys: *Pruner v. Brisbin* 98 Penn. St. 202; damages in trespass qu. cl. should be limited by the mere eviction and to such as arise directly from the force used unless the plaintiff was the owner of the strip claimed: *Thayer v. Sherlock* 4 Mich. 173; *Hoffman v. Harrington* 22 Mich. 52. .

*Chadwick & Cline* for appellee.

COOLEY, C. J. This is an action of trespass quare clausum. The real question involved is one of title. The plaintiff recovered in the circuit court, and had treble damages assessed under How. Stat. § 7959. We may remark here that there seems to have been no valid ground for this increased recovery, as the trespass consisted in tearing down a fence which the defendant claimed had been wrongfully placed on his own land, and on the evidence no reason appears for doubting that the claim was made in good faith.

Plaintiff is owner of lot three of block seven of the subdivision of Fort Gratiot Military Reservation, which was conveyed to her by Clara J. O'Neill, March 27, 1873. O'Neill purchased that lot and the adjoining lot two, on the east side of it, and received a patent from the United States, January 7, 1871. The description in this patent is as follows:

"Being lots 2 and 3 of block 7, of a plat of the subdivision of the Fort Gratiot Military Reservation, filed with the register of deeds of the county of St. Clair on the fifth day of November, 1870, and bounded as follows: 'Beginning at a point in the south line of Stanton street, south 87 degrees and 48 minutes west, 130 feet, from the southwest corner of Stanton and St. Clair streets; thence along the south line of Stanton street north 87 degrees and 48 minutes east, 80 feet; thence south two degrees and 12 minutes east, 144 feet, to a 20-foot alley; thence along the north side of said alley south 87 degrees and 48 minutes west, 80 feet, to the line of the cemetery grant; thence along said line of said grant north 2 degrees and 12 minutes, 144 feet, to the place of beginning.'"

Lots one and two, in block 7, according to this plat, are each fifty feet in width, and lot three occupies the space between lot two and the line of the Cemetery grant, and would therefore be, according to this description, thirty feet in width. Plaintiff claims, however, that the line of the Cemetery grant was in fact 140 feet from St. Clair street, leaving lot 3 forty feet in width; and on this claim she had constructed, on the supposed line of the Cemetery grant, the fence which the defendant tore down. The plat of the military reservation was made on an actual survey under the supervision of Maj. Poe, of the regular army, and was put in evidence, but without any field-notes or references to permanent monuments. The Cemetery grant had been made several years before, but there was no distinct evidence that it had ever been surveyed, and monuments planted or designated.

In 1881 the Cemetery grant was also platted for the United States, and the streets on the former plat were continued across it. Block seven, which was fractional on the plat of the military reservation, was thereby made a complete block, but without uniformity in the width of lots. There was no evidence in the case that an actual survey was made at this time, and on that subject the court and the jury were left to conjecture. Lot four, the added lot to block seven upon this plat, appears upon it as sixty feet in width; but the block is assumed to be two hundred feet wide, which, if St. Clair street is only one hundred and thirty feet from the line of the Cemetery grant, would give seventy feet instead of sixty to lot four. Defendant became purchaser of this lot four.

It thus appears that there must be an error in one of the plats or in the deeds, and that one of these parties has a strip of land ten feet in width beyond what the plat by which her or his purchase was made would on its face allow. The question is, which of the two is entitled to this strip of land?

It is claimed in the brief for the plaintiff that the line of the Cemetery grant was not ascertained until the plat of 1881 was made; that defendant bought by that plat, and is bound by the line as there laid, and can take only what is thereby allowed him. But that the line was not ascertained until that

time is matter of surmise only. Plaintiff herself put evidence into the case which she claimed tended to show that the lines of the Cemetery grant had been fixed several years before the plat of 1871 was made ; but it was quite too vague and uncertain for judicial action.

We are informed by the parties, and can see by the plats which have been put in evidence, that many controversies must depend upon the question that is in issue here. That being the case, we shall say no more about it at the present time than is absolutely essential to a decision. It is very manifest to us that there is important evidence which is attainable, and upon which the proper decision of the controversy may depend, but which no attempt to bring forward has yet been made.

Maj. Poe was not called as a witness in the case, though both plats were made by him or under his supervision. No records of the field-notes of any survey were produced or sought for, and no search made for a survey previous to 1871. It is probable that by calling upon Maj. Poe the line of the Cemetery grant could have been determined with certainty. The most certain and reliable evidence appearing in this record respecting its location is given by the deed to O'Neill, which fixed it at one hundred and thirty feet from St. Clair street. There is nothing in the exceedingly vague and indefinite evidence put in as the basis for an inference that it was further away, which fairly tends to raise a question.

The judgment must be set aside and a new trial ordered.

The other Justices concurred.